UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DONALD TIDWELL,               )
                              )
        Plaintiff,            )
                              )
    vs.                       )    Case No. 1:04CV00075 DJS (AGF)
                              )
JO ANNE B. BARNHART,          )
Commissioner of Social Security, )
                              )
        Defendant.            )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security denying Plaintiff Donald Tidwell's application for

disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C.

§ 401, et seq., and Supplemental Security Income (SSI) under Title XVI of the SSA,

§ 1381, et seq.  The action was referred to the undersigned United States Magistrate

Judge under 28 U.S.C. § 636(b) for recommended disposition.  For the reasons set forth

below, the Court recommends that the decision of the Commissioner be affirmed.

Plaintiff, who was born on May 21, 1958, applied for disability benefits and SSI

on January 2, 2003, claiming a disability onset date of February 1, 2000, due to mental

problems, back problems, and neck pain.  (Tr. at 36-38, 42, 312-14).  After his

applications were denied initially, Plaintiff requested a hearing before an Administrative

Law Judge (ALJ).  A hearing at which Plaintiff was represented by counsel was held on

January 22, 2004.  The ALJ issued a decision on February 10, 2004, finding that Plaintiff

was not disabled as defined by the SSA.[1]  The Appeals Council of the Social Security

Administration denied Plaintiff's request for review.  Plaintiff has thus exhausted all

administrative remedies, and the ALJ's decision stands as the final agency action.

## SUMMARY OF ALJ'S FINDINGS

The ALJ summarized his findings as follows:

1.     Plaintiff met the nondisability requirement for disability insurance benefits through September 30, 2003.

2.     Plaintiff did not engage in substantial gainful activity since the alleged onset of disability.

3.     Plaintiff's cervical radiculopathy (disorder of the spinal nerve roots), status post-cervical spine fusion on March 7, 2000, and chronic obstructive pulmonary disease (COPD) were "severe" impairments.

4.     These medically determinable impairments did not meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[2]

5.     Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.

6.     Plaintiff had the residual functional capacity (RFC) for light work, requiring lifting no more than 20 pounds occasionally and 10 pounds frequently; occasionally climbing ladders, rope, and scaffolds; and occasionally reaching overhead.

7.     Plaintiff was unable to perform his past relevant work (as a roofer or lawn care worker).

---

[1]     The ALJ noted that a previous application for disability benefits filed by Plaintiff had been denied at the initial administrative level in July 2000, with no further review sought.

[2]     As is the general convention, citations in this Report and Recommendation to statutory and regulatory provisions are to those appearing under the Social Security Administration's program for disability insurance benefits rather than for SSI benefits. The relevant provisions are identical under each program.

8. Plaintiff was a "younger" individual, as that term is defined by the relevant regulations.

9. Plaintiff had a "limited" education.

10. Plaintiff had no transferable skills from any past relevant work and/or transferability of skills was not an issue in this case.

11. Plaintiff had the RFC to perform the full range of light work.

12. Based upon an exertional capacity for light work, and Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by Rule 202.19 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (Guidelines).

13. Plaintiff was not under a disability as defined under the SSA at any time through the date of the ALJ's decision.

Tr. at 19-20.

Plaintiff argues that the ALJ committed reversible error in failing to give the proper weight to Plaintiff's testimony about his pain and limitations and to the opinion of a treating physician (Saleem Oza, M.D.) in determining Plaintiff's RFC. Plaintiff asks the Court to reverse the Commissioner's decision and order an award of benefits, or alternatively, to reverse the decision and remand the case for further proceedings.

## BACKGROUND

### Work Record and Disability Forms

Plaintiff worked from 1992 to 1998 as a roofer and from 1998 to 2000 as a lawn care worker. He earned from approximately $1,500 to $5,000 annually during these years. Tr. at 40, 43. Plaintiff was incarcerated from some point in 2000 until the end of December 2002 on a drug conviction. He has not worked since 2000.

On forms accompanying his applications for benefits, Plaintiff reported that he was 5' 8" and weighed 210 pounds. He indicated that he had completed seventh grade and had not attended special education classes. Plaintiff wrote that he last worked on February 1, 2000, and that he stopped working because he was incarcerated. Tr. 41-42. Plaintiff claimed that he could do no lifting or bending, could not sit or stand for long periods at a time, and could not do much walking. He claimed that there was nothing he could do to stop the pain he felt, and that it was always there. Plaintiff wrote that he used to be able to prepare a full course meal and loved to cook, but could no longer stand long enough to do so. He also claimed that his memory was not good, and that following directions was not easy for him. Plaintiff stated that he loved to play with his grandchildren, but that this was not easy because he would get out of breath. He indicated on the forms that he did not go out of the house often, and when he did it was to the store and back or to doctors' appointments. Tr. at 64-66.

**Medical Record**

On November 19, 1999, Plaintiff was admitted to the hospital with complaints of non-traumatic neck pain. Evidence was found of cervical radiculopathy, and an MRI of Plaintiff's cervical spine revealed moderate-to-large-size disc herniation at C5 and C6, for which a neurosurgical consultation was scheduled. Relatively high blood pressure was noted on several occasions during Plaintiff's four-day hospital stay, and he was prescribed medication for this as well as for pain. He did well on the pain medication and was discharged from the hospital upon being advised to wear a cervical collar and return to the emergency room if his neck pain suddenly increased. Tr. at 275-76, 281.

A neurosurgical consultation took place on November 19, 1999. The medical report from this consultation notes that Plaintiff had normal comprehension and provided a good history without difficulty. Tr. at 277-79. On December 13, 1999, another neurosurgeon noted that while Plaintiff still experienced some pain, Plaintiff reported a dramatic decrease in symptoms and expressed his wish to avoid surgery. Blood work was positive for cocaine, marijuana, and opiates. Tr. at 282-84. Plaintiff's pain returned, and on February 23, 2000, surgical intervention was decided upon. Tr. at 111. On March 7, 2000, Plaintiff underwent C5-C6 anterior fusion; he was discharged from the hospital the same day in stable condition. Tr. at 106-10.

As noted above, Plaintiff was incarcerated thereafter in 2000, at age 42. A significant part of the medical record in this case (Tr. at 138-274) consists of Plaintiff's prison medical records. With regard to Plaintiff's mental condition, on May 21, 2001, he was diagnosed by a psychiatrist with major depression and alcohol dependence. He was prescribed Trazodone (an antidepressant) and Vistaril (an anxiety drug). Plaintiff continued to receive medications and psychotherapy for his mental health problems. Notes from July 2, 2001, state that Plaintiff reported hearing voices, and that he could not tolerate being around crowds. On July 16, 2001, his Trazodone and Vistaril were increased. By October 11, 2001, the Trazodone had been changed to Elavil. Notes from February 27, 2002, state that Plaintiff was grieving over the recent loss of family members in a car accident. On March 29, 2002, Plaintiff complained of being nervous and not wanting to be around a lot of people. He described being in good spirits one day and then not the next day. Tr. at 138-143.

On May 4, 2002, it was noted that Plaintiff reported that his mood had been bad lately, and he was started on Doxepin (an antidepressant). Plaintiff stated that he had been on Prozac in the past and felt it helped him, and treatment notes from July 6, 2002, indicate that Plaintiff was on Prozac and was doing better, although he was having trouble sleeping. It was noted that Plaintiff was working in the laundry, and that his energy was good. The mental health notes from July 15, 2002 through December 24, 2002 document continued ups and downs with depression and anxiety, stressors from family matters, and adjustments of Plaintiff's medications. The notes from December 6, 2002, state that Plaintiff reported that the past month had not been so bad, and that he noticed some improvement, had more energy, and felt better "some days." The last mental health record from the prison is dated December 24, 2002, when Plaintiff was seen for an exit interview and discharge planning. Plaintiff stated that he planned to live at his mother's house, return to a local counseling service, and work in lawn care. Tr. at 143-51.

Prison records related to Plaintiff's physical condition begin on May 7, 2001, when the prison nurse noted a history of hypertension. Notes from May 24, 2001, state that Plaintiff complained of back and neck pain. He was put on weight restriction for five days and was told to take over-the-counter pain medication. Tr. at 156-63. Notes from June 1, 2001, state that Plaintiff's blood pressure control had recently been very good, that Plaintiff worked well, that he smoked, and that he was taking Atenolol (a beta blocker used to treat high blood pressure/hypertension). Tr. at 165. One June 12, 2001, Plaintiff again complained to the nurse of neck pain or strain, and on June 25, 2001, he complained of back pain radiating down his leg. Tr. at 168-69. Plaintiff was examined by a doctor at

the prison on July 10, 2001, at which time Plaintiff reported that since his fusion surgery in March 2000, he had had several good months, but that in the past two months his neck and back pain had returned. Plaintiff was given pain medication and put on activity restriction for 30 days; he was also advised to stop smoking. Tr. at 171-72.

An X-ray taken of Plaintiff's cervical spine on July 12, 2001, showed good fusion of the disc space at C5-C6 with the bone plug and no evidence of posterior displacement on the bone plug. Tr. at 172-73. On August 23, 2001, Plaintiff reported that he had many problems, the most serious of which was his neck. He stated that he experienced a burning sensation in the back of his neck, and he requested a bottom bunk. Tr. at 176. Notes from August 31, 2001, indicate that Plaintiff was to be assigned a bottom bunk, and that he was told to avoid heaving and lifting things over 15 pounds. Tr. at 177-78. On September 13, 2001, Plaintiff complained to the nurse about back pain and numbness in his right foot. He reported that his right leg "goes out" just by walking on it. Plaintiff was given pain medication and referred to a physician. Tr. at 178-79. A physician examined Plaintiff on September 21, 2001, and prescribed Naproxen (pain medication).

The next notation in the prison medical records that relates to Plaintiff alleged physical disabilities is dated April 19, 2002. It was noted that Plaintiff complained that for the past four-to-six weeks he experienced shortness of breath after exertion, climbing stairs, or walking more than 30 minutes at a time. Tr. at 221. An Albuterol inhaler was prescribed on April 26, 2002, when it was noted that Plaintiff had been smoking one and a half packs of cigarettes daily for the past 30 years. Tr. at 226. On May 17, 2002, Plaintiff told the nurse that he had neck pain since falling out of bed a few days prior. Cervical

spine X-rays taken on May 23, 2002, showed general alignment of the cervical spine and almost complete bridging between the bodies of C-5 and C-6, with the metallic plate and screws in satisfactory condition. There was no evidence of fracture or dislocation. Tr. at 237-40. A physical examination report dated June 5, 2002, indicates that Plaintiff had hypertension, with no other problems noted. Tr. at 152-55.

The last medical record from the prison documenting Plaintiff's physical condition is dated October 23, 2002, at which time Plaintiff reported that he had been dizzy for about a week. A physical examination was unremarkable, and Plaintiff was ambulatory with a normal gait. Plaintiff, who had been a smoker for 40 years, was advised to quit smoking. Tr. at 259. As noted above, Plaintiff was released from prison at the end of December 2002, and he filed his applications for disability benefits on January 3, 2003.

The record includes a "Report of Contact" completed by a state agency employee stating that she contacted Plaintiff on January 28, 2003. According to the report, Plaintiff stated that he was currently taking medication for his depression, and that when he was not on medication he felt down and did not care about anything, but when on the medications he felt better about himself and felt like he could do more and talk with others. Tr. at 68.

On January 22, 2003, Dr. Oza examined Plaintiff and completed a medical report and disability evaluation as a consultant for the state disability agency. Dr. Oza, who indicated that he was not then treating Plaintiff nor had he treated him in the past year, diagnosed Plaintiff with osteoarthritis (OA) involving knee, hip, shoulder, [and something illegible]; hypertension; COPD; and depression. Dr. Oza checked a box on the evaluation

form indicating that it was his opinion that Plaintiff had a mental and/or physical disability which prevented him from engaging in employment for which his age, training, and experience fit him, and that the expected duration of the disability was 6-12 months. Tr. at 101-02. The Report of Contact noted above documents attempts on February 7 and 10, 2003, to contact Dr. Oza about his opinion, each time leaving a message for him. Tr. at 68.

Treatment notes by Musa Wadi, M.D., dated February 12, 2003, state that Plaintiff was referred by Dr. Oza for evaluation of possible COPD. These notes further state that Plaintiff had reduced his smoking to one-half pack of cigarettes per day for the past few months, and that he was using an Albuterol inhaler, two puffs three times a day. Dr. Wadi noted that Plaintiff had severe acid reflux symptoms, and he diagnosed COPD, tobacco abuse, history of gout, exogenous obesity (obesity caused by overeating), and hypertension. Dr. Wadi added that he advised Plaintiff to quit smoking, and that Plaintiff said he would try. Tr. at 291.

A Psychiatric Review Technique form was completed on February 13, 2003, by Marsha Toll, Psy.D., a non-examining state agency consultant. Dr. Toll indicated on the check-box form that Plaintiff had two non-severe medically determinable mental impairments -- major depression and alcohol dependence. Dr. Toll indicated that these impairments resulted in no limitations in activities of daily living and in maintaining concentration, persistence, or pace; mild restrictions in social functioning; and no repeated episodes of extended-duration decompensation. She thus concluded that Plaintiff did not meet the "B" criteria of listing 12.04 (affective disorders including depression) in

Appendix 1.[3]  She also concluded that the evidence did not establish the presence of the "C" criteria for this listing.  Dr. Toll wrote that while the Department of Correction's records reported a BETA IQ of 60,[4] other medical evidence of record (MER) did not support this.  The evidence she pointed to was Plaintiff's notation on his disability report that he did not attend special education classes; the activities of daily living (ADL) he noted on the disability report (having been able to prepare a full course meal, "going to moms, church, doctors appointment"); the fact that he completed his disability forms himself; and the fact he had worked previously as a roofer and landscaper.  She also pointed to the prison mental health notes from December 6, 2002, which she stated reported improvement with Plaintiff's mood and energy.  Dr. Toll did not believe that further testing regarding Plaintiff's IQ was necessary.  Tr. 78-90.

On February 14, 2003, a state agency nonmedical consultant completed a physical RFC assessment based upon a review of the record.  The consultant concluded that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit for about six hours in an eight-hour workday; push and pull without limitation; climb stairs, balance, stoop, kneel, crouch, and crawl frequently; climb

---

[3]  The listing for these disorders sets forth three sets of requirements, sets "A," "B, and "C."  The required level of severity for the disorders is met when the "A" and "B" criteria are satisfied, or when the "C" criteria is satisfied.

[4]  A BETA IQ test measures an illiterate individual's IQ.  The severity of listing 12.05 (mental retardation) is met if a claimant with an IQ of 60 through 70 has a "Physical or other mental impairment imposing an additional and significant work-related limitation of function," or at least two of the following four criteria:  marked restriction of activities of daily living; marked difficulty in maintaining social functioning; marked difficulty in maintaining concentration, persistence or pace; or repeated episodes of extended-duration decompensation.

ladders/ropes/scaffolds occasionally; reach in all directions, including overhead, with limitation; and handle, finger, and feel without limitation. She further indicated that no visual, communicative, or environmental limitations were established by the evidence. The consultant concluded that Plaintiff's allegations of disability due to back and neck problems were only partially credible, and that the total evidence in the file was inconsistent with his alleged limitations. The consultant acknowledged Dr. Oza's January 22, 2003 opinion that Plaintiff's physical disabilities prevented him from working. The consultant then stated that attempts were made to contact Dr. Oza, but that no response was received and that, therefore, the opinion was given no weight. Tr. at 92-99.

Follow-up treatment notes by Dr. Wadi dated April 17, 2003, state that Plaintiff reported dizzy spells, but no other complaints. Tr. at 289. An EEG was performed on June 3, 2003, due to Plaintiff's complaints of dizziness and seizures; the results were "unremarkable." Tr. at 295. Medical notes by Dr. Wadi dated July 1, 2003, state that Plaintiff reported that he did not have dizzy spells anymore. Dr. Wadi noted that Plaintiff continued to smoke, although he had cut down to half a pack per day. Dr. Wadi diagnosed COPD and dizzy spells. Tr. at 286. On July 22, 2003, Dr. Wadi interpreted a pulmonary function study as showing mild obstructive airways disease and possible moderate neuromuscular disease. Tr. at 296.

The record includes medical reports from a clinic dated August 13, August 20, September 25, and November 19, 2003, documenting complaints of/or treatment for a planter wart, abdominal pain with reflux, and depression. In the November 19, 2003 report, the most recent medical evidence in the record, E. S. Hickey, M.D., states that

Plaintiff complained of severe pain that began that morning in his upper back between the shoulder blades. Plaintiff also requested an increased dose of Elavil and Prozac. Tr. at 300-03.

**Evidentiary Hearing**

At the January 2, 2004 hearing, Plaintiff testified that he was 45 years old, had a seventh grade education, could read and write with difficulty, lived with his mother, and did not have a driver's license. He testified that he last worked in 2000 taking care of lawns and left that job when he was incarcerated, and that in any event he had had two heat strokes in one month as a lawn care worker and therefore figured it was time to stop that line of work. Plaintiff testified that he had previously worked as a roofer and stopped because he could no longer lift things. Tr. at 324-27.

Plaintiff testified that he did not work while in prison (from 2000 to 2002), and that while there a psychiatrist put him on medications which he was still taking. He testified that he used to drink alcohol a lot, but stopped when he was incarcerated and no longer did so. Plaintiff testified that about seven months before the hearing he was hospitalized due to breathing problems. He had been using inhalers for about two or three years before that and now continued to use a machine that he had used in the hospital to help his breathing. Tr. 328-29.

When asked about his back, Plaintiff testified that it was not good -- he could hardly bend over and could not sit, stand, or walk for an hour at a time without having to change position. He testified, however, that he was not taking any pain medication. He spent his day basically watching television. His mother prepared his meals; he tried to

help with vacuuming but found it hard to do.  Plaintiff testified that he was restricted to

lifting 10-15 pounds.  Plaintiff also testified that he had about three coughing spells a day,

brought on especially by heat.  He added that he would  be out of breath after walking

from his mother's house to the post office, which was about one block away, and back. Tr.

329-331.

**ALJ's Decision**

      The ALJ found that Plaintiff's cervical radiculopathy and status post anterior

fusion were severe impairments, since they resulted in limitations on Plaintiff's ability to

stand, walk, lift, and carry.  The ALJ found, however, that Plaintiff's COPD and mental

impairments were not severe.  With respect to Plaintiff's depression, the ALJ pointed to the

Report of Contact which indicated that Plaintiff felt better when on medication.  The ALJ

essentially adopted Dr. Toll's reasoning for discounting the prison's assessment of

Plaintiff's BETA IQ of 60 and relied upon her conclusion that Plaintiff's major depression

and alcohol dependence were not severe.  As had Dr. Toll, the ALJ mentioned Plaintiff's

statement on his disability forms that he did not attend special education classes, that he

used to be able to prepare a full course meal, and that he went to his "mothers, church, and

doctors appointment" [sic].  The ALJ noted Plaintiff's ability to prepare his own disability

questionnaires.  The ALJ concluded that Plaintiff's activities of daily living did not

"endorse any significant problem regarding a mental impairment."  The ALJ also pointed

to the prison mental health notes from December 6, 2002, characterizing them as revealing

improvement with Plaintiff's mood and energy.

The ALJ next determined that Plaintiff's severe impairments (cervical radiculopathy and status post anterior fusion) did not meet or equal an impairment listing in Appendix 1. The ALJ proceeded to assess Plaintiff's RFC to determine whether he was able to perform his past work or other work that existed in the national economy. The ALJ concluded that from February 1, 2000 (Plaintiff's alleged disability onset date), through September 30, 2003 (the date Plaintiff was last insured for disability benefits), Plaintiff had the RFC for light work requiring lifting no more than 20 pounds occasionally and ten pounds frequently; occasionally climbing ladders, rope, and scaffolds; and occasionally reaching overhead.

The ALJ stated that no weight was given to Dr. Oza's January 22, 2003 opinion that Plaintiff was disabled, because Dr. Oza did not respond to two attempts to reach him by phone. The ALJ further stated that he gave great weight to the opinions of the state agency consultants because these opinions were based on objective evidence. The ALJ also concluded that the above RFC assessment was consistent with the objective medical evidence, which the ALJ proceeded to summarize. The ALJ noted that Plaintiff alleged disabling back pain, but that there was no medical evidence that Plaintiff had had any substantial treatment for his back, especially while incarcerated. Tr. at 17-18.

The ALJ also found that Plaintiff's testimony that he was not taking any pain medication was inconsistent with disabling pain. The ALJ found that Plaintiff's daily activities as noted in his applications and as testified to (watching TV, playing with his grandchildren, walking to the store and back, going to doctors' appointments, trying to vacuum), were consistent with the assessed RFC. At this point in his decision, the ALJ

found that Plaintiff could not perform his past work, but that Plaintiff could perform the

full range of light work as defined by the relevant regulations.[5]  Considering Plaintiff's age

and limited education, Rule 202.19 of the Guidelines directed a finding of not disabled.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of disability benefits, a court must affirm the

Commissioner's decision "so long as it conforms to the law and is supported by substantial

evidence on the record as a whole."  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005)

(citation omitted).  "Substantial evidence is that which a 'reasonable mind might accept as

---

[5]    "Light work" is defined in 20 C.F.R. § 404.1567(b) as

> work that involves lifting no more than 20 pounds at a time
> with frequent lifting or carrying of objects weighing up to 10
> pounds.  Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with
> some pushing and pulling of arm or leg controls.  To be
> considered capable of performing a full or wide range of light
> work, you must have the ability to do substantially all of these
> activities.

Id.  Social Security Ruling (SSR) 83-10 further explains,

> [s]ince frequent lifting or carrying requires being on one's feet
> up to two-thirds of a work day, the full range of light work
> requires standing or walking, off and on, for a total of
> approximately 6 hours of an 8 hour work day.  Sitting may
> occur intermittently during the remaining time.  The lifting
> requirement for the majority of light jobs can be
> accomplished with occasional, rather than frequent, stooping.
> Many unskilled light jobs are performed primarily in one
> location, with the ability to stand being more critical than the
> ability to walk.

SSR 83-10, 1983 WL 31251, at *6 (1983).

adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)).  The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . .  the court must also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).  Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).  If after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

        In order to qualify for Social Security disability benefits, a person must demonstrate an inability to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both the impairment and the inability to engage in substantial gainful employment must last or be expected to last not less than 12 months).

        To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  The  Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, disability benefits are denied.  If not, the

Commissioner decides whether the claimant has a "severe" impairment (or combination of impairments), defined in 20 C.F.R. § 404.1520(c) as an impairment which significantly limits a claimant's physical or mental ability to do basic work activities.  If the claimant's impairment is not severe, the disability claim is denied.  If the impairment is severe, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix 1.  In evaluating the severity of mental impairments, the ALJ must make specific findings as to the degree of limitation in each of the following functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).

If the claimant's impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled.  If the impairment is one that does not meet or equal a listed impairment, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant is able to perform his past relevant work, he is not disabled.  If he cannot perform his past relevant work, step five asks whether the claimant has the RFC to perform work in the national economy in view of his vocational factors, i.e., his age, education, and work experience.  If not, the claimant is declared disabled and is entitled to disability benefits.   20 C.F.R. §§ 404.1520(a)-(f); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

At step five, the burden is upon the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with his vocational

factors.  <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).  Where a claimant cannot

perform the full range of work in a particular category of work (very heavy, heavy,

medium, light, and sedentary) listed in the Commissioner's Guidelines (20 C.F.R. Pt. 404,

Subpt. P, App. 2) due to nonexertional impairments, such as pain and depression, the ALJ

cannot carry this burden by relying exclusively on the Guidelines, but must consider

testimony by a vocational expert (VE).  <u>Id.</u>; <u>Wilcutts v. Apfel</u>, 143 F.3d 1134, 1137 (8th

Cir. 1998).

Here, as set forth above, the ALJ concluded at step two that Plaintiff's COPD and

mental impairments were not severe impairments.  At step three the ALJ concluded that

Plaintiff's severe impairments (cervical radiculopathy and status post anterior fusion) did

not meet or equal a listed impairment.  The ALJ then concluded at step four that Plaintiff

was unable to perform his past relevant work.  At step five the ALJ concluded, based upon

the Guidelines, that Plaintiff was capable of performing other work in the economy and

was, thus, not disabled.

### ALJ's Discrediting Plaintiff's Allegations of Disabling Pain

Plaintiff first argues that the ALJ committed reversible error by failing to give

proper weight to his testimony in determining Plaintiff's RFC.  Plaintiff notes the factors

the ALJ should have considered, as set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322

(8th Cir. 1984), and SSR 96-7p, and argues that the ALJ's decision is flawed because the

only factor the ALJ mentioned was the fact that Plaintiff was not currently on any pain

medication.  Without elaborating, Plaintiff states that he "has issues that prevent him from

using the types of medication regularly prescribed for chronic pain."  Br. at 8.  Plaintiff

argues that his subjective complaints of pain are fully substantiated by the medical record which contains numerous references to his neck, shoulder, and back pain; and that his subjective complaints are not inconsistent with the level of pain to be expected with "multiple disc problems in the neck."  Br. at 8-9.

A disability claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1).  In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  Id. at 1147; see also Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004).  The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility.  Pearsall, 274 F.3d at 1218.  In Polaski, the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."  739 F.2d at 1322.  Other factors include "observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3)

precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Id.

After considering the Polaski factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that caused him to reject the plaintiff's complaints. Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998). "The decision of an ALJ who seriously considered, but for good cause expressly discredits a claimant's subjective complaints . . . is not to be disturbed." Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to [his] judgment even if every factor is not discussed in depth." Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In many disability cases, there is no doubt that the plaintiff is experiencing pain; "the real issue is how severe that pain is." Sampson v. Apfel, 165 F.3d 616, 619 (8th Cir. 1999).

Here, the fact that Plaintiff was not taking any pain medication clearly supports the ALJ's discrediting Plaintiff's subjective complaints of disabling pain. See Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (in discrediting extent of pain alleged by plaintiff, ALJ properly considered plaintiff's failure to take any narcotic medication for pain but rather only taking non-steroidal anti-inflammatory drugs); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (plaintiff's claim of disabling back pain two years following back surgery was inconsistent with his failure to take pain medication); Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (complaints of disabling back pain were inconsistent with plaintiff's failure to take prescription pain medications); cf. Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (ALJ improperly rejected plaintiff's subjective

allegations of disabling pain where plaintiff, who had a solid work record, made repeated and consistent visits to doctors and availed himself of many pain treatment modalities).

Although Plaintiff alludes in his brief that there were reasons he was not taking any pain medication, he does not offer any such reasons, nor does the Court discern any from the record. Indeed, Plaintiff had at earlier times taken pain medication. The Court further notes that Plaintiff's testimony that he did not work in prison appears to be inconsistent with prison records mentioning that Plaintiff worked in the laundry. In sum, the Court concludes that the ALJ was entitled to discredit the extent of pain alleged by Plaintiff and to find that his pain did not preclude light work. The Court's review of the record and hearing testimony indicates that substantial evidence supports the ALJ's determination that while Plaintiff experiences some pain and limitations, his complaints of disabling pain to the point where he cannot engage in any substantial gainful activity are not credible.

**Weight Accorded Opinion of Dr. Oza**

Plaintiff's second argument is that the ALJ committed reversible error in not giving Dr. Oza's opinion about Plaintiff's limitations controlling weight. In evaluating medical opinion evidence, the ALJ is to consider the nature and extent of the examining/treatment relationship, the supportability of the opinion, the consistency of the opinion with the rest of the record, and the specialization of the medical source. 20 C.F.R. § 404.1527(d). With respect to the first factor, Plaintiff has filed a supplemental pleading (Doc. #18) clarifying that Dr. Wadi was the treating physician who signed the medical reports from February through July 2003 (Tr. at 286-92), and not Dr. Oza as stated in

Plaintiff's brief. Plaintiff further clarifies that Drs. Wadi and Oza were both physicians at Plaintiff's primary care clinic during the time in question, and that Dr. Oza was associated with Plaintiff's care and familiar with his condition.

As noted above, Dr. Oza indicated in his January 22, 2003 examination report that he was not then treating Plaintiff, nor had he treated him in the past year. Tr. at 101. Even accepting Dr. Oza as a treating source, a treating physician's opinion does not automatically control, since the record must be evaluated as a whole, and the ALJ may discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Reed, 399 F.3d at 920-921 (citation omitted).

Dr. Oza's opinion that Plaintiff could not work involves an application of the statute, a task reserved to the Commissioner. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (a medical source's opinion that a claimant is unable to work involves an issue reserved for the Commissioner and is not a medical opinion to which the Commissioner must give controlling weight); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (same). Furthermore, Dr. Oza checked a box indicating his opinion that the expected duration of Plaintiff's disability was 6-12 months, rather than the box for 12 or more months or for permanent. As stated above, in order to qualify for Social Security disability benefits, a person must demonstrate that both the impairment and the inability to engage in substantial gainful employment has lasted or can be expected to last for not less than 12 months. Walton, 535 U.S. at 217-22. Also, Dr. Oza's January 23, 2003 evaluation

appears to be largely based upon Plaintiff's complaints, with no objective medical support cited.

Under these circumstances, although the Court is somewhat troubled by the ALJ's articulated reason for ignoring Dr. Oza's opinion -- that Dr. Oza failed to respond to two telephone messages from a state agency employee -- the Court concludes that the failure to give Dr. Oza's opinion controlling, or even substantial, weight does not warrant a remand of this case.  Cf., e.g., Vandenboom v. Barnhart, ___ F.3d ___, 2005 WL 1421695, at *3-4 (8th Cir. June 20, 2005) (ALJ did not err in disregarding treating neurologist's opinion where it was based largely on the plaintiff's complaints with little documented objective medical support, and where despite doctor's diagnoses of pain in arms, legs, and back, the doctor did not impose any restrictions based upon these diagnoses).

## CONCLUSION

The Commissioner met her burden of proving that plaintiff had the RFC to perform jobs that exist in the national economy.  The ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed.

The parties are advised they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 15th day of July, 2005.